S. E. STARK *v.* WESTERN UNION TELEGRAPH COMPANY.

[65 South. 279.]

1. TELEGRAPHS AND TELEPHONES. *Operation. Action for damages. Sufficiency of evidence. Willful neglect.*

The measure of liability of a telegraph company for failure to transmit a message to plaintiff's father to meet a train with a rig, as plaintiff's child was sick, was properly limited to nominal damages, where it was not shown that the child's death was proximately caused thereby, on account of exposure in carrying her to his father's house.

2. TELEGRAPHS AND TELEPHONES.  *Operation.  Willful neglect.*
It was not reckless, willful or intentional negligence, where a
telegraph company's agent simply forgot to deliver a message
to the operator for transmission, the message being a request to
meet the sender with a rig as his child was sick.

APPEAL from the circuit court of Tallahatchie county.
HON. N. A. TAYLOR, Judge.

Suit by S. E. Stark against the Western Union Tele-
graph Company. From a judgment for plaintiff, de-
fendant appeals.

The facts are fully stated in the opinion of the court.

*Gary & Rice, W. R. Woods* and *Alexander & Alexan-
der,* for appellant.

We submit that there can be no sort of controversy as
to Stark being compelled to walk from the depot to the
home of his father, due to the failure of the appellees to
transmit the telegram in question, nor as to Stark be-
ing compelled to carry his child in his arms for that dis-
tance nor as to the death of the child by strangulation.
The annoyance and discomfort of the walk was an ele-
ment of actual damages. The physical exertion of car-
rying the child in his arms for a distance of nearly a
half mile was also an element of actual damages. And
the strangulation—physical suffering of the child was
another element of actual damage. And so we say that
for these three items or elements of damages the jury
should have been allowed to award compensatory dam-
ages, if they saw fit to do so under the evidence. *Tele-
graph Co.* v. *Hobart,* 89 Miss. 261; *Telephone and Tele-
graph Co.* v. *Jackson,* 95 Miss. 84; *Railway Company* v.
Bloom, 71 Miss. 247.

If the negligence of the telegraph company aggravated
the disease with which the child was suffering, or has-
tened her death, the telegraph company is liable. 3
Southern Reporter 902, and note at page 905; 9 Southern
Reporter 363; 13 Cyc. 31 (Ill.), 11 S. W. 493 and 1 L.

R. A. 378. "It may be said, in the instant case, that an excuse was offered; but it was a question of fact to be decided by the jury as to whether this excuse was sufficient, and, in fact, whether the statements made by the agent of the appellant amounted to an excuse." *Telegraph Cable Co.* v. *Christian,* 102 Miss. 851. "In truth all of appellant's testimony, regarding the handling of the message, was for the jury's consideration, and the jury had the power to say whether they believed or disbelieved such testimony." *Telegraph Cable Co.* v. *Christian,* 102 Miss. 851. And how much greater reason was there in the case at bar for the jury to disbelieve the testimony of A. L. Murphy, co-defendant, who made statements diametrically contradictory, the one with the other, touching the matter of the telegram in question. If the jury chose to disbelieve the testimony of A. L. Murphy, co-defendant, as it had a right to do under the law, then no sort of excuse was offered for the non-transmission of the telegram, and that being true, the law is, that the company is guilty of gross negligence, and being guilty of gross negligence, punitive damages may be assessed. SMITH, C. J. said, in the case of *Steinberger* v. *Western Union Telegraph Co.,* 97 Miss. 260: Since appellee not only violated its duty to appellant by not delivering the telegram, but offered no excuse at all, therefor, the jury could hardly escape the conclusion that its conduct in the matter was so grossly careless as to indicate a total disregard of appellant's rights." "It was the province of the jury to decide that appellant's conduct in the matter was so grossly careless as to indicate a total disregard of appellee's rights." *Telegraph Cable Co.* v. *Christian,* 102 Miss. 851. If the telegraph company saw fit to employ A. L. Murphy, as its representative and agent to serve the public, who was the agent of another master, the railroad company, it was the incurring of obligations, the performance of which might become incompatible with each other, and it

was no excuse to appellant, the party aggrieved by the default in this case, that inconsistent obligations had been assumed. 32 Miss. 46 and 47; 25 S. W. 168 and 1036; 16 S. W. 25; 2 N. E. 604 and 608; Scircle case, 8 Annotated Cases 469, 470 and 472. And we also call particular attention to the dissenting opinion in the case last cited, the Kernodle case, which is not in conflict with the majority opinion on the point here made. The questions of fact involved under this suggestion were for the jury, and particularly is this true in view of the fact that the record shows that A. L. Murphy, co-defendant was flatly contradicted as to the matter of the message. See record pages 161 and 162, *Telegraph Cable Co. v. Christian,* 102 Miss. 851, in holding that the agent or servant of the telegraph company, a common carrier, can absolve his master, who is guilty of a most flagrant tort, from liability, by saying "I forgot." If we will pause a moment, it will be seen how far reaching and what a multitude of wrongs can be and will be covered securely by the diaphanous cloak of forgetfulness. An engineer has only to say, "I forgot to apply the air and put on brakes." A conductor has only to say, "I forgot to stop the train and let the passengers off." The surgeon has only to say, "I forgot to tie the artery, after amputating the limb." What wrongs will not be committed in the name of forgetfulness? What an overturning of the authorities in this state. We respectfully submit that the opinion of the court in this case is not in harmony with the prior decisions of this court. The court holds that appellant failed to establish the fact that the negligence of the telegraph company was the proximate cause of the child's death, and with this finding we are not complaining, but we earnestly and seriously contend that finding should not conclude the case in favor of appellee.

*Harris & Potter* and *Geo. H. Fearons,* for appellee.

No rule is better settled in this state than that applicable to suits for special damages alleged to be caused by the failure of a telegraph company to deliver or transmit a message or of a common carrier to transport goods. The rule is as follows: For a breach of contract to seasonably deliver a message, a telegraph company is liable for the damages which naturally, and in the usual course of things, flow from such breach. Other special damages are not recoverable unless the language of the message or extraneous information bring them within the contemplation of the parties. See: *Foster* v. *Y. & M. V. R. R. Co.,* —— So. 581; *Western Union Telegraph Co.* v. *Clifton,* 68 Miss. 307; *Jacob* v. *Postal Tel. Co.,* 67 Miss. 278; *Johnson* v. *Western Union Telegraph Co.,* 79 Miss. 58; *Western Union Tel. Co.* v. *Pallotta,* 81 Miss. 216; *Jennings* v. *Express Co.,* 86 Miss. 329; *Railroad Co.* v. *Ragsdale,* 46 Miss. 458. These cases all "hark back" to the leading case of *Hadley* v. *Baxendale,* 9 Exch. 341. Further, the special damages likely to arise must be made known to the telegraph company or common carrier at the time the contract was made. *Jennings* v. *Express Co., supra.* Further, the damages arising from the negligent delay in transportation by common carriers are generally and correctly treated as arising *ex contractu. Jennings* v. *Express Co., supra;* also, especially, *Western Union Tel. Co.* v. *Hogue,* 49 S. W. 924. An apt illustration of the rule, as applicable to the case at bar, will be found in the case of *Foster* v. *Y. & M. V. R. R. Co.,* 23 So. 581. The rule is as follows, as laid down in 37 Cyc., at page 1774: Where a message is sent for the sole purpose of requesting the addressee to meet the sender at a railroad depot, with or without a conveyance while the delay or non-delivery of the message may, and usually does, result in some disappointment and inconvenience, there is, as a rule, no actionable damage, except possibly the cost of obtaining a public conveyance.

107 Miss.]                    Brief for appellee.

Disappointment and inconvenience of this character are not generally regarded as anguish sufficient to justify a recovery of substantial damages even in a mental anguish state; nor is it ordinarily regarded as within the contemplation of the parties under these circumstances that the party will become sick or contract a cold, or nervous prostration, or otherwise be subject to physical suffering, although the company may from the terms of the message, or otherwise, be chargeable with notice of facts which will render it liable for special damages of this character.  This general rule is amply supported by authorities and it seems settled that where the special circumstances (there were no special circumstances in the case at bar which rendered the walk necessary), are not made known to the company, as in the cases set forth above, and which are relied upon by counsel for the appellant, that the natural result of the failure to deliver a message of this character would be that the sender of the message would hire a public conveyance. The following cases support the rule as laid down in Cyc., and is the rule which we insist controls the case at bar.  *Y. & M. V. R. R. Co.* v. *Foster* (Miss.), 23 So. 581; *Western Union Tel. Co.* v. *Powell,* (Texas) 118 S. W. 226; *Triggs* v. *Western Union Tel. Co.* ( Georgia), 61 S. E. 855; *Western Union Tel. Co. Pratt,* 18 Okla. 274; *Kirby* v. *Western Union Tel. Co.,* 77 S. C. 580; *Hildreth* v. *Western Union Tel. Co.,* 56 Fla. 387; *Western Union Tel. Co.* v. *Bryant,* 46 N. E. 385; *Western Union Tel. Co.* v. *Regland,* 61 S. W. 421; *Western Union Tel. Co.* v. *Smith,* 13 S. W. 169; *Western Union Tel. Co.* v. *Campbell,* 81 S. W. 580; *Jones* v. *Western Union Tel. Co.,* 75 S. C. 280; *Todd* v. *Western Union Tel. Co.,* 77 S. C. 580; *Western Union Tel. Co.* v. *Hogue,* 79 Ark. 33; *McAllen* v. *Western Union Tel. Co.,* 7 S. W. 715; *Williams* v. *Western Union Tel. Co.,* 136 N. C. 82; *Stafford* v. *Western Union Tel. Co.,* 73 Fed. 273.  All of these cases, as we have stated above, fully support the text quoted from

Cyc. and clearly and elaborately illustrate the rule that the special injury complained of must be such as would naturally and in the ordinary course of events follow from the negligence of the defendant, such as may be reasonably considered as within the contemplation of the parties at the time the contract was made. We do not see how the case at bar can be distinguished in principle from the case of the *Y. & M. V. R. R. Co.* v. *Foster,* 23 So. 581. In that case the telegram requested a party to meet the plaintiff, with a buggy, at the train. The telegram was not delivered. The plaintiff walked home through the hot sun and was made sick. WHITFIELD, J., delivered the opinion of the court and held that the plaintiff could not recover damages from voluntarily walking home in the hot sun; that this could not be held as the natural and proximate result of the failure to deliver the message.

In the case at bar, the message was to the plaintiff's father and as follows: "Meet me at depot with rig, as Ethel is sick." This message was not delivered and the plaintiff, without making any effort to get a conveyance, walked to his father's house, with the child, through the cold, and claims that that walk was the cause of the child's death. The fact that the child was sick cannot affect the principle. This circumstance made it all the more reasonable and natural to assume or contemplate that a conveyance would be obtained. It is shown in the case at bar that conveyances were available, there were two livery stables, but no effort was made by the plaintiff to obtain a vehicle and his walk through the cold, as Mrs. Foster's walk through the sun, was his voluntary act, and no more the natural result of the failure to deliver the message than Mrs. Foster's walk.

COOK, J., delivered the opinion of the court.

Appellant brought suit against the Western Union Telegraph Company for damages caused by its failure to

deliver a message sent by appellant to his father.  Appellant resided at Morehead, and was the father of a girl about four years of age.  This child had been ill for about ten days with diphtheria, and its parents determined to take the child to the home of appellant's father at Derma.  The attending physician had not then diagnosed the trouble as diphtheria.

The morning appellant left Morehead with his child the following message was delivered by him to the agent of appellee for transmission to his father at Derma: "Meet me at the depot with rig, as Ethel is sick."  Appellee's agent, to whom this message was delivered, was not the telegraph operator, and, being engaged about his business as station agent, forgot to give the message to the operator when he came in, and by reason of this negligence on his part the message was never sent.  The record shows that Mr. Stark told the agent, when he delivered the message to him, that his daughter was "right sick."

It is the contention of appellant that, had the message been sent, his father would have met him at the depot at Derma with a hack, and the failure to send the message forced him to walk from the depot to his father's home, a distance of about a half mile, carrying his child in his arms, facing a damp, cold, north wind, and because of this walk, and consequent exposure, his child died within an hour after he reached Derma.  The trial court instructed the jury to find a verdict for nominal charges in favor of plaintiff, appellant here.  By this instruction the court, in effect, instructed the jury the evidence did not warrant a finding that the failure to send the message was the cause of the child's death.

The question for us to decide is about this: Could a reasonable and impartial jury believe from the evidence that the walk from the depot at Derma in the open air caused the death of the child?  The trip from Morehead to Derma consumed something over seven hours, and

appellant was compelled to change cars twice during the trip—first at Mathiston and again at Houston. The morning he left home he carried the child in his arms to the depot, a distance of two hundred or three hundred yards. The day was inclement and cool, and it rained at intervals during the entire trip; but it was not raining while he was going from his home to the depot, nor did it rain while he was walking from the depot at Derma to his father's home. When the change of cars was made at Mathiston, appellant walked about two hundred yards with the child in his arms in the face of a brisk north wind. At Houston, where there was a second change of cars, appellant and the child rode in a "bus" about a half-mile to the connecting line, where he had to wait for some time for a train to Derma. When Derma was reached, appellant was met by his father; but, as his father had not been advised of his coming, the meeting was accidental, and no conveyance had been provided.

Dr. Powell, the family physician, also happened to be at the depot, and at the request of appellant he made a cursory examination of the child, and saw that she needed attention. Her pulse was quick and breathing abnormal. Appellant requested Dr. Powell to come to the home of his father and take charge of the child. The doctor, within a short time, did visit the child, and found her in a critical condition. Up to this time no one suspected that the child was suffering with diphtheria. After examining the child, the physician went to his home near by to get an instrument with which to treat the child's throat, and when he got back death was in command. The child passed away before he could administer a heart stimulant.

It will be noted that Dr. Powell did not think a walk from the depot at Derma to the home of appellant's father would endanger the child's life. He saw and examined the little sufferer, and did not advise against the walk. Just here it may be said that Dr. Powell testified

that the child died from diphtheritic poison. She was beyond human aid when she reached Derma is the opinion of the physician on the ground. The disease had progressed too far to be then arrested. The evidence shows that diphtheria is a treacherous disease, and the rapid change from an apparently favorable condition to a speedy dissolution is not at all infrequent.

At the trial several physicians were called and gave their opinions from a hypothetical statement of the case. This evidence has been carefully analyzed, and, taken as a whole, it amounts to about this: That the exposure of the child to the cold wind while being carried from the depot to the home of appellant's father was detrimental, and probably hastened her death; but none of the experts said she would probably have survived if she had been carried from the depot in a hack.

This was all long-distance testimony, and the opinions that the last exposure hastened the death were doubtless predicated upon a theory embraced in the hypothetical question that the car in which the journey was terminated was warmer than the cars of the preceding trains, and, the child being overheated, exposure to the cold wind shocked her nervous system. This hypothesis was not supported by the evidence. True, appellant did say that the last car was warmer; but his opinion was based *solely* upon the fact that the child was sweating, and not from any difference in temperature which was perceptible to him. The mother said she did not discover any difference in the temperature.

This long, wearing trip all the doctors agreed was a tax upon the vitality of the child; and, indeed, any layman of ordinary intelligence knows this to be true. It is much more reasonable to assume that the sweating was due to the increased and increasing weakness of the child, caused by the poisons in her blood which ultimately paralyzed the heart; and yet the sweating was evidently stressed as the symptom of overheating.

As we see it, the evidence in this case does not establish the contention of appellant that the neglect to send the telegram was the proximate cause of the child's death, and we believe the trial court was right in limiting the recovery to nominal damages.

The pathetic death of the little girl and sympathy for her parents tug at the heart strings of the normal human being, and under this influence we are too prone to magnify the wrong of the corporation. Tested by the rules of law, which are based on reason and justice, we cannot reach the conclusion that the failure of the agent to deliver the message to the operator was reckless, willful, or intentional. He was a human being, and forgot. It is suggested that the sending of the message was a matter of life or death. We do not think that even the parents of the child had a suspicion that their child was seriously ill when they left Morehead; much less did they anticipate the death of the child.

*Affirmed.*